**PUERTO RICO CONSERVATION FOUNDATION, et al.,**
Plaintiffs,

v.

**Thomas D. LARSON, etc., et al., Defendants.**

**Civ. No. 91–2378 GG.**

United States District Court, D. Puerto Rico.

Feb. 27, 1992.

---

**25.** See footnote #20.

**26.** See footnote #20.

Armando Cardona, Rio Piedras, Puerto Rico, Steven S. Rosenthal, Ellen E. Deason, Linda F. Calhoun, Morrison & Foerster, Washington, D.C., Nathaniel S.W. Lawrence, Natural Resources Defense Council, San Francisco, Cal., for plaintiffs.

Silvia Sepulveda–Hambor, U.S. Dept. of Justice, General Litigation Section, Environment and Natural Resources Div., Washington, D.C., Ivonne Gonzales Morales, Old San Juan, Puerto Rico, Maria–Hortensia Rios, Asst. U.S. Atty., D. Puerto Rico, Hato Rey, Puerto Rico, John Ebersole, U.S. Dept. of Agriculture, Office of Gen. Counsel, Atlanta, Ga., Irwin Schroeder, Regional Counsel, Federal Highway Admin., Albany, N.Y., Julia L. Perry, Regional Counsel, Eastern Federal Lands Highway Div., Federal Highway Admin., Sterling, Va., Frank D. Inserni, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

### I. INTRODUCTION

With every passing day on this planet, life becomes more perilous due to the reckless and sometimes illegal acts of individuals, agencies, corporations and even nations which fail to realize the importance of the environment to the present and future generations. It is thus not by happenstance that plaintiffs, a coalition of numerous environmental organizations, challenge the decision by the Federal Highway Administration and the U.S. Forest Service to rebuild a portion of Highway PR 191 ("Highway 191")—which runs through the "El Yunque" rainforest, also known as the Caribbean National Forest—without the prepa-

ration of an Environmental Impact Statement ("EIS").[1] This portion of the highway has been closed for twenty two (22) years due to landslides in 1970 which made it impassable. With only an Environmental Assessment ("EA")[2] dating back to 1982, defendants determined that an EIS was not essential for deciding whether to reopen the road, and issued a Finding of no Significant Impact (FONSI) to continue with the construction project.

We issued a temporary restraining order ("TRO") on January 30, 1992, to restrain defendants from initiating the construction in Highway 191 on February 3, 1992. On February 13, 1992, a hearing was held where the parties argued various motions, including plaintiffs' motion for preliminary injunction. We found that "good cause" existed for extension of the TRO under Rule 65(b) of the Federal Rules of Civil Procedure and thus extended the TRO for ten (10) additional days.

## II. BACKGROUND

Road PR 191 was first built by the Civilian Conservation Corps in the 1940's. This narrow road crosses El Yunque at a high elevation through the steep-sided valley of the Rio Icacos. In October, 1970 a major landslide forced the U.S. Forest Service to close the road with gates at kilometer 13.3 on the north and kilometer 21 on the south. Subsequent storms in 1977 and 1979 caused other landslides, which further destroyed the road. In 1982, the Federal Highway Administration prepared plans and a contract to rebuild the closed portion under a "Memorandum of Agreement between the Commonwealth of Puerto Rico's Department of Transportation and Public Works, the U.S. Forest Service and the Federal Highway Administration." Based on an EA, the Federal Highway Administration decided that it did not need to prepare an EIS and issued a FONSI.

After extensive construction efforts, the contractor stopped work at Highway 191 without reopening it in its entirety and the Federal Highway Administration declared the contract completed in 1987. The Federal Highway Administration later tried to complete the project, but rejected all bids tendered as too expensive. Following Hurricane Hugo in 1989, which caused additional damages, the Federal Highway Administration terminated plans for additional work needed. In 1991, defendants decided to reopen Highway 191, and after determining that an EIS was not needed, they awarded their bid to Redondo Construction Corporation on November 4, 1991.

Plaintiffs filed this suit on November 4, 1991. They allege that defendants' decision to proceed with the reconstruction of Highway 191 without an EIS violates the National Environmental Policy Act ("NEPA"). Plaintiffs requested that this court issue a preliminary injunction to en-

---

**1.** NEPA ("National Environmental Policy Act") describes the procedures to be followed in preparing an EIS. An EIS is defined as "a detailed statement by the responsible official on—

(i)  the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v)  any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

42 U.S.C. § 4332(2)(C), *quoted in Silva v. Lynn,* 482 F.2d 1282, 1284, n. 2 (1st Cir.1973). "We [the First Circuit] have emphasized the word 'detailed' because it connotes the careful, reasoned and fully explained analysis which we think Congress intended. . . . [F]inally, and perhaps most substantively, the requirement of a detailed statement helps insure the integrity of the process of decision by precluding stubborn problems or serious criticism from being swept under the rug."

**2.** The First Circuit has recognized that an EA and EIS serve very different purposes. Our circuit defines an EA as follows: "An EA aims simply to identify (and assess the 'significance' of) potential impacts on the environment; it does not balance different kinds of positive and negative environmental effects, one against the other; nor does it weigh negative environmental impacts against a project's other objective, such as, for example, economic development ... [T]he purpose of an EA is simply to help the agencies decide if an EIS is needed." *Sierra Club v. Marsh,* 769 F.2d 868, 875 (1st Cir.1985).

join defendants from proceeding with the construction until they have fully complied with NEPA.

## III. THE SCOPE OF NEPA AND CEQ

NEPA is a federal statute which sets forth national environmental priorities. NEPA explicitly recognizes the "critical importance of restoring and maintaining environmental quality to the overall welfare and development" of humankind. 42 U.S.C. § 4331(a). It also acknowledges the continuing responsibility of the federal government to "preserve important historic, cultural and natural aspects of our national heritage and maintain, wherever possible an environment which supports diversity and variety of individual choice". 42 U.S.C. § 4331(b)(4). The Supreme Court has noted that

[N]EPA promotes its sweeping commitment to 'prevent or eliminate damage to the environment and biosphere' by focusing Government and public attention on the environmental effects of proposed agency action. 42 U.S.C. § 4321. By so focusing agency attention, NEPA insures that the agency will not act on incomplete information, only to regret its decision after it is too late to correct.

*Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 371, 109 S.Ct. 1851, 1858, 104 L.Ed.2d 377 (1989).

NEPA creates a Council on Environmental Quality ("CEQ") which has issued detailed regulations explaining NEPA's statutory language, informing federal agencies when an EIS is needed and how one is prepared. *Sierra Club v. Marsh,* 769 F.2d 868, 870 (1st Cir.1985) (hereinafter *Marsh I* ) CEQ regulations allow federal agencies to make a preliminary EA to determine whether the environmental effects of a suggested action are "significant." *Id.* at 870 (*quoting* 40 C.F.R. §§ 1501.3, 1501.4, 1508.9, 1508.27 (1984)). "According to these regulations, the EA is a 'concise'[3] document that 'briefly' discusses the relevant issues and either reaches a conclusion

that preparation of an EIS is necessary or concludes with a 'Finding of No Significant Impact' (FONSI)." *Id.*

When addressing the issue of actions that affect "significantly" the quality of the environment, the CEQ defines the term "significant" under a comprehensive list of factors. Among them are:

the degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources; [t]he degree to which the action might adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973; [and] [w]hether an action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment. 40 C.F.R. § 1508.27.

## IV. THE PRELIMINARY INJUNCTION STANDARD

The First Circuit standard governing the district court's resolution of motions for preliminary injunctions was set forth in *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 6 (1st Cir.1991) (*citing Aoude v. Mobil Oil Corp.,* 862 F.2d 890 (1st Cir. 1988); *Hypertherm, Inc. v. Precision Products, Inc.,* 832 F.2d 697, 699 & n. 2 (1st Cir.1987)):

To determine the appropriateness of granting or denying a preliminary injunction, we have instructed trial courts to use a quadripartite test, taking into account:

1. The likelihood of success on the merits;

2. The potential for irreparable injury;

3. The balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues

**3.** CEQ regulations state, "Agencies should avoid preparing lengthy EA's except in unusual cases.... *[I]n most cases, however, a lengthy EA indicates that an EIS is needed.* 46 Fed.Reg.

at 18037 (emphasis added)." *quoted in Marsh I,* 769 F.2d at 874. The EA in the instant case is 45 pages long.

as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer.

*Id.* at 6.

■ Although the need to prevent irreparable injury to a party is an important factor when considering a petition for preliminary injunction, the most compelling reason to grant this request is the "need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." 11 Wright & Miller, *Federal Practice and Procedure,* Civil § 2947, at 146 (Supp.1991).

District courts have ample discretion when making the decision to grant or deny an application for preliminary injunction and "[u]nless a mistake of law or an abuse of discretion is made manifest ... the appellate court ... will not disturb the ruling below." *Narragansett,* 934 F.2d at 5 (1991) (*citing Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 842 (1st Cir.1988); *Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981)).

We shall now examine the preliminary injunction factors in light of the factual scenario before us.

## A. Likelihood of Success

■ The First Circuit considers it "critical" for a party seeking a preliminary injunction to establish a likelihood of success on the merits. *Narragansett,* 934 F.2d at 6 (1991). *See also Public Service Co. v. West Newbury,* 835 F.2d 380, 383 (1st Cir. 1987); *Lancor v. Lebanon Housing Auth.,* 760 F.2d 361, 362 (1st Cir.1985). A party seeking a preliminary injunction does not have to prove its claims at this stage of the proceedings, only that it is likely to succeed on the merits.

Plaintiffs' proof of likely success on the merits is intimately tied to this court's determination that the action involves a (1) major federal action, (2) significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C)(i). Plaintiffs argue that in cases exhibiting these two characteristics, NEPA mandates all agencies to assess and evaluate environmental effects through the preparation of an EIS.

The record shows and we find that the proposal to rebuild PR 191 is a "major federal action" under NEPA and CEQ. CEQ regulations define "major federal action" as "actions with effects that may be major and which are potentially subject to federal control and responsibility." They further define "actions" as "new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies...." A specific category of "federal actions" enumerated in the CEQ regulations is the "[a]pproval of specific projects, such as construction or management activities located in a defined geographical area. Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities." 40 C.F.R. § 1508.18. " '[M]ajor Federal actions' include the 'expansion or revision of ongoing programs'." *Andrus v. Sierra Club,* 442 U.S. 347, 363 n. 21, 99 S.Ct. 2335, 2343 n. 21, 60 L.Ed.2d 943 (1979) (*quoting* S.Rep. No. 91–296, p. 20 (1969)). In the instant case, the FHWA retains control of the Caribbean National Forest. For example, since 1982 the agency has been directly involved in the planning and contracting to rebuild the forest's closed path. In addition, the agency awarded the 1991 construction bid to rebuild Highway 191 through El Yunque.

With regards to the finding that the FHWA's action significantly affects the quality of the human environment, we note that in *Marsh I,* the First Circuit held that the burden of showing such impact is on the challenger of an agency's decision not to prepare an EIS under NEPA. *Marsh I,* 769 F.2d at 870 (*quoting Quiñonez–López v. Coco Lagoon Development Corp.,* 733 F.2d 1, 2 (1st Cir.1984)). We find that plaintiffs have met their burden of showing a substantial possibility that the decision of the FHWA to begin construction at Highway 191 can significantly affect the quality of the human environment. Four principal contentions support the finding that irreparable injury will ensue if the construction is

not enjoined: (1) construction and delivery of equipment would harm the coquí and other endangered species, and threaten rare flora living along or within the road site;[4] (2) construction that involves excavation will heighten the potential for landslides and surface erosion; (3) erosion from the excavation will increase sediment loads in the Rio Icacos, thus harming water supplies; (4) the construction would disrupt major ongoing research projects located in the Rio Icacos Valley.[5] At the February 13th hearing, plaintiffs stated that their burden of showing a likelihood of success was also met with the Magistrate's Report and Recommendation which recommended the granting of plaintiffs' motion for summary judgment, and the remand of this matter to the designated agencies to prepare an Environmental Impact Statement. We find this report and recommendation to be thoughtful and well reasoned and while making no final judgment as to whether it will be adopted, we agree with plaintiffs that the evidence before us shows that plaintiffs have met their burden of showing likelihood of success on the merits, in that a probable violation of NEPA could have occurred.

We further note that courts should be vigilant when examining an agency decision to go forward without preparation of an EIS. "[T]he determination that an EIS is not required must be closely scrutinized for, in failing to prepare an EIS, the intensive environmental examination directed by Congress in its passage of NEPA is avoided." *Mont Vernon Preservation Society v. Clements,* 415 F.Supp. 141, 146 (D.N.H. 1976). We cannot overlook the length of the EA (45 pages). Such detailed report is suspicious, and suggests that an EIS is needed. See n. 3, *supra.*

*Marsh I* also held that

[i]f the record reveals such a 'substantial possibility' with sufficient clarity, the agency's decision (not to produce an EIS) violates NEPA. Depending upon the agency's reasons, a reviewing court might say that such agency made a mistake interpreting NEPA or the CEQ regulations, or the court might say that the agency's 'no significant impact' finding was simply 'arbitrary, capricious, an abuse of discretion,' 5 U.S.C. § 706(2)(A).

*Marsh I,* 769 F.2d at 870–71.

**B. Irreparable Injury**

Plaintiffs also have the burden of demonstrating that irreparable injury will result if the preliminary injunction is not granted. See *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir. 1989). This element is fulfilled if plaintiffs can prove that they are likely to suffer this harm before a decision is rendered on the merits. Irreparable injury is the kind for which monetary damages do not provide adequate compensation. *See Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981).

A preliminary injunction cannot be granted to prevent the mere possibility of injury. "A presently existing, actual threat must be shown." *Mass. Coalition of Citizens v. Civil Defense Agency,* 649 F.2d 71, 74 (1st Cir.1981); *See also,* 11 Wright & Miller, *Federal Practice and Procedure* Civil § 2848, (1973). Irreparable injury is not speculative nor remote, but is actual and imminent. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

Plaintiffs allege that they will be immediately and irreparably harmed if defendants are allowed to presently proceed with the construction to reopen Highway 191. Plaintiffs cite to the aforementioned claims of imminent danger to the coquí and other endangered species, as well as the threat to rare flora if construction and the

---

**4.** "In the vicinity of the proposed work are found three of the four forest types found on the Caribbean National Forest; Colorado, Palm and Tabonuco....

Although no comprehensive flora study has been completed, five plant species have been identified as rare or endangered in the vicinity of the proposed work area." A.R. I–001, p. 23. Cited in Magistrate's Report & Recommendation n. 4.

**5.** Plaintiffs claim that if, disturbed, the results from the present research would become tainted and therefore be rendered useless.

delivery of equipment are allowed in the area, the potential for landslides, surface erosion and the harm to water supplies and ongoing research projects. *See ante* at 9–10.

The Supreme Court in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987) found that: "[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." Plaintiffs have made a sufficient colorable claims that if the construction is allowed to advance, irreparable injury could occur. No money damages would be sufficient to compensate society for the permanent loss of one of our most precious natural resources, biological diversity, and such potential harm obligates us to proceed with caution.

Without rendering a decision on the merits of the case, this court finds that actual and imminent irreparable injury to plaintiffs is likely to occur if defendants are allowed to proceed with the construction project.

We further note that the First Circuit in *Sierra Club v. Marsh*, 872 F.2d 497 (1st Cir.1989) (hereinafter *Marsh II* ), when discussing the *Amoco* case expressed that "[ ...], the harm at stake in a NEPA violation is a harm to the environment, nor merely to a legalistic 'procedure' nor, for that matter, merely to the psychological well-being." 872 F.2d at 504 (citations omitted). Thus, a violation of NEPA can itself be considered irreparable injury. *Id.* at 504. We have enough evidence before us to find that defendants' attempts to proceed with the El Yunque project may constitute a NEPA violation.

### C. Balancing of equities

The third requisite to be met by plaintiffs is the balancing of the relevant equities. The *Amoco* court held that in the likelihood

that environmental injury could occur, the balance of harms "will usually favor the issuance of an injunction to protect the environment."

Defendants allege that they would be adversely affected if a preliminary injunction is issued, as they would be barred from starting the reconstruction of Highway 191. We reject defendants' contention that they may suffer monetary loss from the delay because of a potential breach of contract lawsuit by the construction company hired to complete the project. Defendants decided to continue with this project after this suit was filed and in doing so, they assumed any monetary risks resulting from their decision. Initial approval of a contract by an agency cannot be used to circumvent NEPA's mandate.[6] Defendants' argument justifies the wisdom of our Circuit's recognition of the reality of an agency's institutional momentum in its process of decision-making. "The difficulty in stopping a bureaucratic steamroller, once started, still seems to us, after reading *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987), a perfectly proper factor for a district court to take into account in assessing that risk [implied by violation of NEPA], on a motion for a preliminary injunction." *Marsh II*, 872 F.2d at 504.

When examining this third factor in light of the hardship to the nonmovant (defendants), contrasted with the hardship to the movant (plaintiffs) if the relief is withheld, we find that no cognizable harm will occur to defendants if barred from commencing construction until a resolution on the merits is rendered. This road has been closed for the past twenty two (22) years, and any delay in the outcome of this case will be minimal compared to the past delay. The defendants voluntarily chose to proceed with their construction bid while litigation was pending. We find that if any injury to defendants ensues, it would be

---

6. It would be incongruous with this approach to environmental protection, and with the Act's manifest concern with preventing uninformed action, for the blinders to adverse environmental effects, once unequivocally removed, to be

restored prior to the completion of agency action simply because the relevant proposal has received initial approval. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 371, 109 S.Ct. 1851, 1858, 104 L.Ed.2d 377 (1989).

self-inflicted, the result of improper agency decision to steamroll the implementation of its plans. Furthermore, if defendants begin construction and it is afterwards determined that this action was in violation of NEPA—as we think likely—plaintiffs and the Caribbean National Forest could have already suffered irreparable harm that could not be compensated with monetary awards.

Therefore, upon careful evaluation of the arguments before us, this court finds that the balance of equities supports granting the preliminary injunction to plaintiffs.

## V. PUBLIC INTEREST

■ The fourth and last factor courts consider when deciding whether to grant a preliminary injunction is the effect on the public interest of a grant or denial of the restrainer. This factor involves policy considerations that bear on whether the injunction should be granted.

This court finds that an injunction is needed to preserve the *status quo.* By maintaining the *status quo* until the resolution on the merits, the public will receive the benefits of the procedural protection guaranteed by NEPA, and an assurance that the public interest in an area as culturally rich and biologically diverse as El Yunque is not shortchanged by expediency.

Furthermore, if plaintiffs successfully prevail in their claim that irreparable injury will occur if defendants are allowed to proceed with the construction of Highway 191, granting the preliminary injunction prevents this injury from occurring, thus benefiting the public prior to the final determination. However, if after this court reviews and decides the merits of the case, it finds for the defendants, the public will not be harmed by this short delay, which pales in significance to the twenty two (22) years that this road has already been closed.

## VI. CONCLUSION

After applying the First Circuit's standard for granting or denying an application for preliminary injunction to the facts of this case, we are compelled to grant plaintiffs' motion for a preliminary injunction.

Plaintiffs have established full compliance with the four factors set forth by our Circuit for injunctive relief. We are convinced that if a preliminary injunction is not granted, plaintiffs are likely to suffer irreparable harm. Upon assessment of the evidence before us and taking into consideration the Magistrate's Report and Recommendation, we find that plaintiffs also meet the burden of showing likelihood of success. Moreover, when evaluating the balancing of relevant equities and the effect upon the public interest, plaintiffs have shown that there is a higher risk involved in permitting construction to begin on Highway 191 than in delaying such construction, and that the public will not be harmed from a short delay until the proceedings in this case are completed or until we can rule on the Magistrate's Report and Recommendation recommending summary judgment in favor of plaintiffs. If we decide to adopt said recommendation after careful evaluation of the corresponding objections from the parties, the preliminary injunction will be rendered moot. Furthermore, we find that the public would suffer greater harm if defendants are not barred from commencing construction and it is later determined that it was executed in violation of NEPA.

WHEREFORE, in view of the above, plaintiffs' motion for preliminary injunction in this case is hereby GRANTED. It is further ORDERED that defendants Thomas D. Larson, Dale Robertson, Federal Highway Administration, U.S. Forest Service, their agents, employees, contractors and/or subcontractors be ENJOINED and RESTRAINED from issuing a Notice to Proceed and commencing construction or engaging in any activities or actions relating in any way to Commonwealth Route PR 191.

SO ORDERED.