William W. GALLOWAY, et al. *v.* ARKANSAS STATE
HIGHWAY AND TRANSPORTATION DEPARTMENT, et al.

94-26                                                      885 S.W.2d 17

Supreme Court of Arkansas
Opinion delivered October 17, 1994

*Henry Law Firm, P.A.*, by: *David P. Henry*, for appellant.

*Robert L. Wilson*, Chief Counsel and *Charles Johnson*, Staff Att'y for appellee, Arkansas State Highway and Transp. Dep't.

*Donald W. Bourne*, City Att'y, for appellee, City of Russelville.

TOM GLAZE, Justice. On November 19, 1992, William W. Galloway and others filed suit against the City of Russellville, Arkansas State Highway and Transportation Department (ASHTD), Arkansas State Highway Commission and its Commissioners and Director, seeking to enjoin a construction project to widen 2.5 miles of Highway 64 which runs through Russellville. Galloway alleged, among other things, that, under federal law, ASHTD was required to conduct a public hearing and prepare an environmental statement before proceeding with the project. Galloway claimed that ASHTD's expenditures on the project, without its compliance with federal law, constituted illegal exactions under Article 16, § 13 of the Arkansas Constitution.

In their answers and motions, ASHTD and the other defendants denied that any illegal exactions existed and alleged a number of affirmative defenses, including the city's claim that it was not a real party in interest and was not participating in the project.

Sometime after Galloway filed suit, ASHTD awarded the contract for the project to Southern Pavers, Inc. On March 5, 1993, Southern Pavers was allowed to intervene in this action to protect its interests. To prevent Southern Pavers from undertaking further work on the project, Galloway requested and obtained

a preliminary injunction conditioned upon posting a $500,000 bond. No bond was ever posted.

In July of 1993, the trial court heard this matter on its merits, and it then filed extensive findings of fact and conclusions of law. In accordance with its findings and conclusions, the court dismissed Galloway's suit against all defendants. In sum, the trial court determined the Highway Department had complied with all required procedures under applicable federal law, 23 U.S.C. § 128, and pertinent regulations, 23 C.F.R. §§ 771.101—137. Specifically, the trial court held that no public hearing was required for the Highway 64 project.[1]

Galloway's first point for reversal is that the lower court's requirement of a $500,000 bond in an illegal exaction suit effectively denied him due process. He argues that the intervenor's, Southern Pavers's, potential damages were not caused by Galloway's suit, but instead, by ASHTD's request for bids and having awarded the contract after the suit was filed. Galloway cites no authority on this point except ARCP 65, and makes no effort to show how he was prevented from seeking a preliminary injunction after filing suit but before ASHTD awarded the construction contract.

■■ ARCP 65(d) clearly provides a court with discretion to require the giving of an adequate security as a condition precedent to the issuance of a preliminary injunction and that discretion is given the trial court in such matters because that court is in the best position to know whether security should be required. *See* Reporter's Notes to Rule 65. Because Galloway offers no convincing argument or citations of authority on this point, we reject his due process issue. In addition, we note that Galloway never perfected an appeal from the lower court's preliminary injunction order; that being true, our decision herein, affirming the trial court's ultimate ruling, dismissing this suit against the defendants, renders Galloway's first point moot in any event.

Galloway next argues the trial court erred in granting a directed verdict, finding no public hearing and environmental

---

[1]Other holdings or conclusions were reached by the trial court, but it is unnecessary to consider all such alternative holdings that might support its decision.

impact statement were lawfully required before ASHTD could proceed with the Highway 64 project. Indisputably, eighty percent of this project is funded by the Federal Highway Administration (FHWA) and the remaining amount is underwritten by the state. Because the project involves federal monies spent on a highway project going through Russellville, Galloway says a public hearing and environmental statement were necessary under 23 U.S.C. § 128(a), which provides in relevant part as follows:

> Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community.

ASHTD counters by arguing not all federally-funded projects require public hearings and environmental impact statements. It further points out that 23 U.S.C. § 315 provides for rules and regulations to implement Title 23, including § 128, and that 23 C.F.R. § 771.101, et seq., implements and complies with § 128, and the National Environmental Policy Act (NEPA) and its regulations. *See* 40 C.F.R. §§ 1500 through 1508. For instance, § 771.111(h) provides that, for the Federal-aid highway program, each state must have procedures approved by the FHWA to carry out a public involvement/public hearing program pursuant to § 128 and 40 C.F.R. sections 1500 through 1508. However, § 771.111(h)(2)(iii) continues as follows:

> One or more public hearings or the opportunity for hearing(s) to be held by the State highway agency at a convenient time and place for any Federal-aid project which requires (1) significant amounts of right-of-way, (2) substantially changes the layout or functions of connecting roadways or of the facility being improved, (3) has a substantial adverse impact on abutting property, (4) otherwise has a significant social, economic, environmental or other effect, *or for which the FHWA determines that a public*

*hearing is in the public interest.* (Emphasis added; inserted parenthetical numbers.)

In addition, § 771.117 further provides that categorical exclusions based on past experience with similar actions, do not involve significant environmental impacts. Such an exclusion is further defined as a category of actions which do not individually or cumulatively have a significant effect on the human environment and have been found to have no such effect in procedures adopted by a federal agency in implementation of these regulations and for which neither an environmental assessment nor an environmental impact statement is required. *See* 40 C.F.R. § 1508.4.

In keeping with the foregoing regulations, and before letting bids on the Highway 64 project, ASHTD and FHWA field inspected the site and, by documentation, ASHTD subsequently notified FHWA that no public hearing would be held. Afterwards, FHWA approved the project.

Consistent with the federal requirement set forth in § 771-111(h)(iii), the trial judge received considerable evidence in making the following findings of fact:

1. Approximately 99% of the Highway 64 project would be constructed within ASHTD's existing right-of-way.

2. The project did not have a substantial adverse impact on abutting property, since it does not (a) induce significant impacts to planned growth of land use for the area, (b) require relocation of persons, residences or businesses, (c) have any significant impact on air, noise, or water quality as shown by ASHTD's environmental evaluation.

3. The layout or function of Highway 64 will remain the same, in fact, with only two additional lanes which will almost lie within the existing right-of-way. The connecting roadways have the same access to and across the highway.

4. The project does not have a significant social, economic, environmental, or other effect upon the area.

Since FHWA approved the Highway 64 project, it

obviously determined that the project came within a categorical exclusion and that a public hearing was not required under federal law and regulations. Certainly, the record does not reflect that, as authorized under § 771.111(h)(2)(iii) above, the FHWA otherwise determined a public hearing would be in the best interests of the public.

By definition, categorical exclusions are categories of action that have been predetermined not to involve significant environmental impacts and therefore require no further agency analysis absent extraordinary circumstances. *Nat. Trust for Historic Preservation* v. *Dole*, 828 F.2d 776 (D.C. Cir. 1987); § 771.117(c). A review of FHWA's categorical exclusion determinations involve whether its actions are arbitrary and capricious. *Id.* It also seems elementary to say that, in these circumstances, the enforcement of § 128(a) and relevant regulations is not the responsibility of the state court but rather that of federal agencies disbursing federal funds, and, if necessary, that of the federal courts by injunctive control of such agencies. *See County Highway Comm'n of Rutherford Co.* v. *Smith*, 61 Tenn. App. 292, 454 S.W.2d 124, 129 (1970).

In conclusion, we uphold the trial court's decision that there is no substantial evidence upon which a fact-finder could find for Galloway. Most significant, Galloway cites no authority to counter FHWA's interpretation of federal law, and no authority that its actions in approving ASHTD's project without a public hearing were erroneous and unlawful. The cases Galloway has cited, *Puerto Rico Conservation Foundation* v. *Larson*, 797 F.Supp. 1066 (1992), and *Hickory Neighborhood Defense League* v. *Burnley*, 703 F.Supp. 1208 (1988), are readily distinguishable from the situation here. Certainly those cases offer no support for the proposition that a state court can declare unlawful a federal agency's actions taken in the disbursement of federal funds. Nor has he shown authority which would empower a state court to enforce such a holding. This is not to say that, if a federal agency or federal court had ruled invalid the federal funding of the Highway 64 project without a public hearing, Arkansas citizens might not then have the right under the state constitution to bring an illegal exaction suit. Those, of course, are not the circumstances now before us.

For the reasons set forth above, we affirm.