Huey Bruno "Chip" HICKS and Allegis Mortgage Corporation
*v.* Joe E. MADDEN, Jr., Arkansas Securities Commissioner

95-294                                          908 S.W.2d 90

Supreme Court of Arkansas
Opinion delivered October 30, 1995

*William Murphy*, for appellants.

*Theodore Holder*, Ass't Sec. Comm'r, for appellee.

BRADLEY D. JESSON, Chief Justice. We are asked to review an order granting summary judgment in favor of the Arkansas Securities Commissioner. The chancellor ruled that the Commissioner was, as a matter of law, entitled to an injunction prohibiting the appellants from transacting business as a mortgage loan company or loan broker in the State of Arkansas. We find no error and affirm.

In late 1991 and early 1992, appellant Hicks began formation of Allegis Mortgage Company. He made inquiries at the Arkansas Securities Department ("the Department") regarding registration and exemption requirements. He was given a copy of the Mortgage Loan Company and Loan Broker Act, which is codified at Ark. Code Ann. §§ 23-39-101 to 309 (Repl. 1994). The Act provides that a mortgage loan company wishing to do business in Arkansas must complete an application for registration containing, among other things, the applicant's audited financial statements, must post a $25,000.00 surety bond, and must have a net worth of not less than $25,000.00. See Ark. Code Ann. §§ 23-39-301 to 305 (Repl. 1994).

On January 27, 1992, Hicks sent a letter to the Department claiming an exemption from the Act's requirements. He based this claim on the fact that, as of January 23, 1992, Allegis had received approval from the Department of Veterans Affairs ("the VA") to act as a prior approval lender on VA loans. Indeed, Ark. Code Ann. § 23-39-306(a)(4) (Repl. 1994) provides that a company shall be so exempt if the company is subject to licensing, supervision, or auditing by the VA. Nevertheless, the Department denied the exemption, noting that an auditor's report submitted by Hicks showed Allegis to be technically insolvent.

At this point, a flurry of correspondence began among Hicks, the Department, and the VA. On February 3, 1992, the VA withdrew its approval of Allegis based on "misrepresentation of your status as a creditable mortgage corporation." A few days earlier, the VA had received information that hot check charges had been filed against Hicks and that Hicks had failed to pay for office supplies. Next, the Department, citing the company's insolvency, ordered Allegis and Hicks on February 7, 1992, to cease and desist from any loan mortgage or brokering activity.

Hicks immediately contacted both the Department and the VA in an attempt to explain the company's situation and to ask for reconsideration. However, the Department maintained its position. The VA (by this time having received a copy of the Department's cease and desist order) refused to reinstate its approval. The net effect of these events is that, other than the brief period of VA approval between January 23 and February 3, 1992, Hicks and Allegis were not authorized by any regulatory entity to conduct mortgage loan or brokerage business in Arkansas.

On April 14, 1992, the Commissioner filed suit in Pulaski County Chancery Court seeking an injunction against Allegis and Hicks. The petition alleged that the company was engaging in fraudulent business practices, was insolvent, and was doing business without a proper registration or exemption filing.[1] Numerous documents were attached to the petition in which customers complained that they had paid various fees but had not received loans. Documents were also attached that showed that several appraisers and a credit bureau that had performed services for Allegis had not been paid.

The chancellor issued a temporary restraining order (TRO) on April 14, 1992, the same day the petition for injunctive relief was filed. The appellants moved to dissolve the TRO, denying insolvency and fraudulent business practices, and stating that, because Allegis was a VA approved lender, it was exempt from the registration, bond, and net worth requirements of state law. The TRO was temporarily lifted to allow the appellants to close three loans, but it otherwise remained in effect.

---

[1]At this point, the Commissioner was unaware that the VA had withdrawn its approval.

In February of 1994, the Commissioner apparently discovered for the first time that the appellants' VA approval had been revoked on February 3, 1992. An amended petition for a permanent injunction was filed, containing the new allegation that the VA had withdrawn its approval. The appellants filed no response to this petition.

On September 23, 1994, the Commissioner filed his motion for summary judgment, which is the subject of this appeal. The motion set out three reasons why the Commissioner was entitled to injunctive relief as a matter of law: 1) since the appellants never answered the amended complaint, the averments therein were taken as admitted; 2) since VA approval had been revoked, the appellants were no longer exempt from state regulation; and 3) the company was insolvent.[2] Ten exhibits were attached to the deposition. Exhibit one was the affidavit of VA loan officer Wilma Graham. Ms. Graham stated that the VA withdrew its approval by letter of February 3, 1992, because it received information that hot check charges had been filed against Hicks. She further stated that the approval had never been reinstated. Exhibits two through six were affidavits of Allegis customers. The customers detailed their transactions with Hicks and Allegis, once again stating that they had paid fees of various kinds but had not received loans. Importantly, the affidavits demonstrated that the business transactions took place between January 20, 1992, and late March of 1992, outside the eleven day "window" of VA approval. The final three exhibits were from appraisers who had performed work for Allegis and had not been paid. In particular, one appraiser stated that he had been paid with a check on which payment was stopped and later by a check written on a closed account.

The appellants responded to the motion by denying receipt of the amended complaint, denying that Allegis was insolvent, denying that the VA properly revoked its approval, and claiming that there were issues of fact to be decided. The appellants attached three exhibits to their response. First was the affidavit of Hicks stating that the VA approval was improperly revoked and that the Department had improperly denied the exemption. Second

---

[2]At a later hearing, the Commissioner's counsel explained that the term "insolvency" was being used in a broad sense to include the appellants' assets being impaired and their affairs in an unsafe condition.

was the deposition of Wilma Graham, in which she stated that there was a possibility, though not a probability, that the VA would have reinstated its approval had it not received a copy of the Department's cease and desist letter. Third were the exhibits to Ms. Graham's affidavit, which primarily consisted of the correspondence among the parties in January and February of 1992.

A hearing was held on October 31, 1994. The chancellor granted the Commissioner's motion for summary judgment. He based his ruling not only on the exhibits to the motion, but on the fact that the appellants had failed to respond to the Commissioner's amended complaint filed February 3, 1994. Without reaching the issue of the appellants' failure to respond to the amended complaint, we find that the chancellor's decision to grant summary judgment was correct.

The Arkansas Securities Commissioner has been given the duties of general supervision and control over mortgage loan companies and brokers doing business in Arkansas. Ark. Code Ann. § 23-39-201 (Repl. 1994). Pursuant to those duties, the Commissioner may seek injunctive relief against a company whenever it appears that the company is engaging in practices prohibited by the act, or that the assets or capital of the company are impaired, or that the company's affairs are in an unsafe condition. Ark. Code Ann. § 23-39-202 (Repl. 1994).

The exhibits to the Commissioner's motion show conclusively that the appellants: 1) transacted mortgage loan business during a time when they were not authorized to do so, either by the department or the VA, 2) were not paying their bills and attempted to pay some bills with improper checking procedures, 3) took money from customers and provided no services in return, and 4) appeared, at least under the findings of one audit, to be undercapitalized. The appellants' response did nothing to rebut the substance of these allegations. In the face of such evidence, the chancellor was correct to conclude that, at the very least, the appellants' affairs were in an unsafe condition. Therefore, a proper showing was made for the issuance of the injunction.

The appellants make several arguments on appeal, none of which have merit. They claim that federal law mandates notice and opportunity for a hearing before VA approval is revoked. See 38 U.S.C. § 3704(d), which provides that, "subject

to notice and an opportunity for a hearing," a lender may be barred from acquiring VA loans. However, the chancellor noted correctly that such an argument should be presented to the VA. In *Galloway* v. *Arkansas State Highway & Transp. Dept.*, 318 Ark. 303, 885 S.W.2d 17 (1994), we recognized that, in instances such as this one, enforcement of regulations regarding notice and hearings is not the responsibility of the state but of the particular federal agency involved.

■ The appellants also present two constitutional arguments. They claim that the Act violates the due process clause and the supremacy clause of the U.S. Constitution. Not one case or other citation of authority is given in support of these arguments. We will not address arguments unsupported by convincing argument or authority. *Galloway, supra.*

■ Finally, the appellants direct us to a definition of "loan broker," which appears at Ark. Code Ann. § 23-39-401(B)(i)(j) (Repl. 1994). Whether this definition is helpful to appellants, or not, it is not applicable here. The cited statute is part of Act 140 of 1993 which, by the terms of its preamble, does not operate to alter any definitions which apply to the Mortgage Loan Company and Loan Broker Act.

Affirmed.