SOUTHERN COLLEGE of NATUROPATHY d/b/a Southern College of Naturopathic Medicine and Gary Axley, D.O.M. *v.* STATE of Arkansas, *ex rel.* Mike Beebe, Attorney General

04-862                                    203 S.W.3d 111

Supreme Court of Arkansas
Opinion delivered February 10, 2005

---

*Treeca J. Dyer, P.A.,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Lamar B. Davis,* Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This is the second appeal before this court involving Gary Axley and the Southern College of Naturopathy. *See Axley v. Hardin,* 353 Ark. 529, 110 S.W.3d 766 (2003). In the present case, the State filed a complaint against the Southern College of Naturopathy, doing business as the Southern College of Naturopathic Medicine ("SCN" or "the College"), Gary Axley, the president of SCN, and others,[1] alleging that the defendants had violated the Arkansas Deceptive Trade Practices Act.

In particular, the State contended that SCN purported to confer upon its students a "doctoral degree in naturopathic medicine" after a two-week course at SCN's campus in Waldron. In addition, SCN informed its students that, once they had completed their "degree," they would be able to apply to the American Association of Drugless Practitioners, the International Association of Naturopathic Physicians, and the American Naturopathic Medical Association for membership and board certification. However, the State alleged, these claims were fraudulent and misleading, because none of those entities are recognized by the United States Department of Education as authorized accreditation entities in the field of naturopathic medicine. Therefore, the State claimed, contrary to SCN's assertions, students who enroll at SCN and complete the two-week program are not eligible to take the Naturopathic Physicians' Licensing Examination ("NPLEX"), nor are they eligible to transfer their SCN credits to any of the nationally recognized or regionally accredited naturopathic medical institutions in the United States.

---

[1] The other named defendants were The Herbal Healer Academy, Inc., Marijah McCain, the Natural Path Massage Clinic, and Robert Maki, LMT. None of these defendants are parties to the instant appeal.

In addition, the State's complaint alleged that Axley was holding himself out to the public as an authorized naturopathic physician, contrary to Arkansas law, and that these and other activities constituted the unlicensed practice of medicine, thereby creating a public nuisance.

On April 4, 2003, the State filed a petition for preliminary injunction, in which it alleged that Axley and SCN offered a two-week training course to become a licensed naturopathic physician; in doing so, the State contended, Axley and SCN "encourage[d] and allow[ed] unlicensed and otherwise unqualified students to engage in clinical trials where invasive medical techniques are performed." These activities, according to the State, presented a substantial danger to the health, welfare, and safety of the public. After a hearing on the State's petition for injunction, the trial court issued a preliminary injunction barring Axley and SCN from certain enumerated business practices.[2]

On September 9, 2003, the State filed a motion to compel discovery. After a hearing, the trial court granted the State's motion, directing Axley and SCN to produce all information requested by the State by December 31, 2003; the material sought included, among other things, student information and records. However, on February 12, 2004, the State filed a motion for discovery sanctions, alleging that Axley and SCN had redacted all identifying information from the material provided. The State pointed out that this had been precisely the information that was requested in several of its interrogatories and requests for production, and that the redaction appeared to have occurred on original copies of the records.

On May 3, 2004, the trial court entered an order granting the State's motion for discovery sanctions and issuing a default judgment against SCN and Axley, thereby making the preliminary

---

[2] These practices included the following: facilitating or permitting persons not licensed to practice medicine to engage in clinical trials involving invasive medical techniques; engaging in clinical trials or procedures that involve invasive medical techniques outside of Axley's scope of practice; disseminating documents or certificates stating that the holder is a naturopathic doctor or "N.D."; facilitating or permitting unlicensed persons to hold themselves out as being able to suggest, recommend, prescribe, or administer forms of treatment or healing; offering medical or other services or selling any medical product or service while using the title "doctor of naturopathy" or "naturopathic physician"; and entering into or forming any legal structure for the purpose of avoiding compliance with the terms of the injunction.

injunction permanent. From this order, Axley and SCN bring the instant appeal, in which they contend the trial court erred in the following three respects: 1) by refusing to consider the rules and regulations of the Arkansas State Board of Acupuncture and Related Techniques; 2) by "extending its injunction to cover health procedures that Axley is licensed to perform; and 3) by "entering summary judgment [*sic*] for failure to allow the State to discover certain information because the discovery request was too broad in scope."

In their first point on appeal, SCN and Axley, who holds a license to practice acupuncture, assert that the trial court erred when it refused to consider the rules of the Arkansas State Board of Acupuncture and Related Techniques ("ASBART") that define the scope of practice for licensed acupuncture practitioners. We review evidentiary errors under an abuse-of-discretion standard. *Southern Farm Bureau Cas. Ins. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003); *Arkansas Department of Human Services v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002). The trial court has broad discretion in its evidentiary rulings; hence, the trial court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Id.*

At the hearing on the State's motion for preliminary injunction, Axley and SCN attempted to introduce what was purported to be a "certified copy" of the Rules and Regulations of ASBART, which describe the scope of practice for an acupuncturist or practitioner of oriental medicine. Axley sought to introduce the rules in order to argue that his conduct fell within his scope of practice. Although the court initially agreed to allow the rules into evidence, when defense counsel gave the court a copy of the rules, the following colloquy ensued:

> THE COURT: Well, this is only part of a document.
>
> COUNSEL: Your Honor, it's all their regulations that they have on file.
>
> THE STATE: Your Honor, letter A usually precedes letter B.
>
> THE COURT: Yeah. This is not a complete document.
>
> COUNSEL: Your Honor, they filed this Title One on August 9th of 2001. They filed B and Title One on

August 9, 2001; they filed B before they filed the rest of it, if you look at the time and date stamp.

THE COURT: I'm not going to allow it. I'm not going to allow any testimony about it.

COUNSEL: For what reason, Your Honor?

THE COURT: It doesn't make sense to me.

COUNSEL: But Your Honor, it's a certified copy.

THE COURT: Well, you need —

COUNSEL: The fact that the Secretary of State organized it in this fashion does not mean that it doesn't make sense.

THE COURT: Well, you'll need to get somebody here to testify about this.

COUNSEL: So you're not admitting it on what basis?

THE COURT: It's in the — I already said I would admit it as Defendant's Exhibit Number 1. But I don't — I'm not going to allow any testimony about it because it doesn't — I was iffy on admitting it. Now, I look at it and it's not in any kind of order. If you'll have somebody to testify about this, I will listen to it.

COUNSEL: I guess I'm confused, Your Honor. The Secretary of State filed these regulations in reverse order. They filed B before they filed one, so they provided the packet.

THE COURT: Then you'll need to get somebody here to testify about that because just looking at it, it doesn't make a lick of sense.

COUNSEL: And so the reason that you're not allowing testimony is because it doesn't make sense.

THE COURT: Yes.

COUNSEL: And does that go to relevance or what, Your Honor? I'm just trying for purposes of the record to determine the reason for the court's denying this after having first admitted it.

THE COURT: It goes to the competency of this evidence. I look at it and it doesn't make sense, so I'm not going to allow testimony about it until you get somebody here to tell me what it means and how it's organized. On its face, it doesn't make sense.

COUNSEL: And that refers to which rule of evidence, Your Honor?

THE COURT: Hearsay rule.

COUNSEL: Which part of the hearsay rule? Just that it's hearsay?

THE COURT: That it's hearsay, sure. It's not competent; it's not relevant. Move on.

On appeal, Axley and SCN assign error to this ruling, asserting that the court was required to take judicial notice of the Board of Acupuncture's rules and regulations. They assert that, had the court considered the rules and regulations, it would have found that the procedures about which the State complained was a procedure covered by the scope of practice of ASBART and Axley's license. Axley and SCN conclude that the court's failure to consider the rule should be reversed because the injunctions issued prohibited conduct by Axley and SCN that was otherwise lawful under ASBART's rules.

■ We do not reach the merits of Axley's judicial notice argument, because he has changed his argument on appeal. It is well settled that an appellant may not change the grounds for objection on appeal, but is limited by the scope and nature of his or her objections and arguments presented at trial. *Divers v. Stephenson Oil Company, Inc.*, 354 Ark. 695, 128 S.W.3d 805 (2003); *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). At the trial court level, Axley did not ask the court to take judicial notice of the rules; instead, he attempted to introduce a document into evidence. The court never refused to take judicial notice of the rules, because it was never asked to take judicial notice.

Under Ark. R. Evid. 201(c), a trial court *"may* take judicial notice [of adjudicative facts] whether requested or not," although under Rule 201(d), a court *"shall* take judicial notice if requested by a party and supplied with the necessary information." As stated above, Axley never asked the trial court to take judicial notice of the Acupuncture Board's rules and regulations. Instead, he proffered a copy of the rules for introduction into evidence, and the trial court concluded that the copy was not properly admissible. Because Axley did not raise the issue of judicial notice before the trial court, we do not consider his judicial notice argument on appeal.

We also note, however, that the court gave Axley an opportunity to clear up the confusion surrounding the document. The court offered to allow Axley to call someone from the Secretary of State's office to come in and testify how the documents were organized. Axley failed to take the court up on that offer, and should not be heard to complain about the situation on appeal. *See Houston v. Knoedl,* 329 Ark. 91, 947 S.W.2d 745 (1997) (not an abuse of discretion for trial court to refuse to admit property deeds when no witness was offered to explain confusion surrounding those deeds).

In his second point on appeal, Axley argues that the trial court erroneously enjoined him from engaging in practices that he is licensed to perform. The State sought to enjoin Axley's activities pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.* (Repl. 2001). In particular, Ark. Code Ann. § 4-88-107(a)(1) (Repl. 2001) prohibits, among other things, "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services[.]" Further, Ark. Code Ann. § 4-88-104 (Repl. 2001) provides the following:

> In addition to the criminal penalty imposed hereunder, the Attorney General of this state shall have authority, acting through the Consumer Counsel, to file an action in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, including, but not limited to, the seeking of restitution and the seeking of an injunction prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter.

This court has held that when the Attorney General has a specific statutory mandate to protect the public interest, the

traditional common-law prerequisites for an injunction in civil litigation, such as irreparable harm and likelihood of success on the merits, are not applicable. *See Mercury Marketing Tech. Of Delaware v. State*, 358 Ark. 319, 189 S.W.3d 414 (2004) (citing *Commonwealth v. Mass. CRINC*, 392 Mass. 79, 466 N.E.2d 792 (1984); *People ex rel. Hartigan v. Dynasty Sys. Corp.*, 128 Ill. App.3d 874, 471 N.E.2d 236 (1984)). It is a violation of the Act that triggers the prayer for an injunction. *Id.* On appellate review, this court determines whether the trial court's factual finding of a violation of the DTPA was clearly erroneous. *Id.* (citing Ark. R. Civ. P. 52(a); *Thompson v. Bank of America*, 356 Ark. 576, 157 S.W.3d 174 (2004)).

As stated above, Axley argues on appeal that the trial court enjoined him from engaging in activities which he is licensed to perform. He points out that he is a licensed acupuncturist; his license, dated January 10, 1998, provides the following:

> [The] Board of Acupuncture and Related Techniques hereby decrees that Gary Axley has fulfilled the requirements of Doctor of Oriental Medicine, D.O.M. and is hereby licensed to practice Acupuncture, herbal medicine and related techniques, under authority of the State of Arkansas.

He asserts that, for his activities to be illegal, those actions and activities must be outside the scope of practice of his acupuncture license.

It is not apparent from Axley's brief whether he is challenging the preliminary injunction, issued on May 15, 2003, or the permanent injunction, entered on May 3, 2004. He offers no citations or references to any Addendum page numbers that would indicate with which order he takes issue on appeal. We assume, however, that he is challenging the permanent injunction, because any appeal from the preliminary injunction would be moot. *See, e.g., Galloway v. Ark. State Hwy. & Transp. Dept.*, 318 Ark. 303, 885 S.W.2d 17 (1994) (where appellant never perfected an appeal from the lower court's preliminary injunction order, point on appeal challenging that order was moot).

In any event, as we assume that Axley is arguing about the permanent injunction, that order provided as follows:

> Pursuant to Ark. Code Ann. § 4-88-104 and the common law authority of the Attorney General, Defendants Southern College of

Naturopathic Medicine and Gary Axley are permanently enjoined from: (a) facilitating or permitting unlicensed persons from engaging in clinical trials where medical techniques are performed, including, but not limited to, blood purification and detoxification, reflexology, acupressure, iridology, and chelation therapy; (b) engaging in clinical trials or procedures that involve invasive medical techniques outside of Defendant Gary Axley's scope of practice, as defined by Ark. Code Ann. §§ 17-102-101 *et seq.*, and any regulations promulgated thereunder; (c) disseminating documents or certificates stating that the holder is a naturopathic doctor or "N.D."; (d) facilitating or permitting unlicensed persons to hold themselves out as being able to suggest, recommend, prescribe, or administer forms of treatment or healing for the intended relief or cure of physical diseases, ailments, injuries, or conditions; (e) offering medical, healthcare, or healing arts services while using the title "Doctor of Naturopathy" or "Naturopathic Physician" or the use of the abbreviation "M.D.", "N.D.", or "N.M.D." in connection with Defendant Gary Axley's name or likeness, so as to indicate that he is a medical or naturopathic doctor; (f) selling any medical, healthcare, or healing art product or service while using the title "Doctor of Naturopathy" or "Naturopathic Physician" or the use of the abbreviation "M.D.", "N.D.", or "N.M.D." in connection with Defendant Gary Axley's name or likeness, so as to indicate that he is a medical or naturopathic doctor; and (g) entering into, forming, organizing, or reorganizing into any partnership, corporation, or other legal structure for the purpose of avoiding compliance with the terms of this Order.

Axley argues on appeal that the injunction "prohibits procedures that are specifically included in the acupuncture scope of practice." As *he* phrases the issue, the trial court enjoined him from engaging in the following: 1) the sale of any medical, healthcare, or healing art product or service; 2) acupressure; 3) iridology; 4) application of parasites and worms; 5) chelation; 6) reflexology; 7) blood purification and detoxification; 8) clinical trials; and 9) "the gratuitous offering of medical, healthcare or healing arts services while using the title doctor of naturopathy or naturopathic physician and the use of the abbreviations Dr., M.D. and N.D. in connection with the defendant's name or likenesses so as to indicate that said defendant is a medical or naturopathic doctor."

We address the most obvious point first. The language in the injunction pertaining to the "application of parasites and worms" was found only in the preliminary injunction, not in the

permanent injunction quoted above. Therefore, any reference to or argument about the topic of "parasites and worms" is moot. *See Galloway, supra.*

■ Next, we consider Axley's claim that he was enjoined from engaging in "acupressure, iridology, chelation, reflexology, blood purification and detoxification, and clinical trials."[3] An examination of the language of the injunction reveals that Axley himself is not enjoined from engaging in these activities. Rather, he is enjoined from *"facilitating or permitting unlicensed persons from engaging in clinical trials where medical techniques are performed,* including, but not limited to, blood purification and detoxification, reflexology, acupressure, iridology, and chelation therapy." (Emphasis added.) The plain language of the injunction does not bar Axley himself from engaging in acupressure or any of the other enumerated activities. Instead, he is barred from allowing unlicensed persons to engage in these activities. Facilitating and permitting persons to engage in activities that they are not licensed to perform simply does fall within the scope of Axley's license to practice acupuncture. Therefore, there is no merit to his argument that the trial court improperly enjoined him from engaging in legal activities.

■ Next, Axley assigns error to the court's barring him from, as he phrases it, "the sale of any medical, healthcare, or healing art product or service." However, a complete reading of the injunction reveals that Axley has again quoted only a portion of the court's ruling, thereby distorting its true meaning. The actual language of the order prohibits Axley from "selling any medical, healthcare, or healing art product or service while using the title 'Doctor of Naturopathy' or 'Naturopathic Physician' or the use of the abbreviation 'M.D.', 'N.D.', or 'N.M.D.' in connection with Defendant Gary Axley's name or likeness, so as to indicate that he is a medical or naturopathic doctor."

■ The trial court did not enjoin Axley from engaging in legal, licensed activities. Arkansas does not recognize, license, or authorize the professional terms "Doctor of Naturopathy,"

---

[3] "Iridology" involves the study of the iris of the eye, "especially as associated with disease." *The American Heritage College Dictionary* 717 (3d ed. 1997). Chelation involves the "remov[al] of heavy metals from the bloodstream by means of a chelate, such as EDTA." *Id.* at 239.

"Naturopathic Physician," "N.D.", or "N.M.D." Therefore, Arkansas cannot and does not recognize Axley as naturopathic doctor. In addition, Axley is not a licensed medical doctor, and therefore may not legally indicate that he is one, pursuant to Ark. Code Ann. § 17-80-113 (Repl. 2001), which provides as follows:

> [The medical licensing statutes] shall not be construed to authorize any person to use the title "Doctor," unless that title is authorized under § 17-1-101 *et seq.*, in which case that person shall use the title in accordance with the statutes and regulations governing the particular health care profession or unless that person has been granted a doctoral degree in any healing arts profession and is licensed in that profession under § 17-1-101 et seq.

Axley is, however, licensed as a Doctor of Oriental Medicine[4] pursuant to Ark. Code Ann. § 17-102-101 *et seq.* (Repl. 2001), and he is not enjoined from utilizing that title. Under these statutes, the Arkansas State Board of Acupuncture and Related Techniques is empowered to adopt, publish, and revise such rules and regulations as are necessary to enable it to carry into effect the provisions of § 17-102-101 *et seq. See* Ark. Code Ann. § 17-102-206(a)(5) (Repl. 2001). The Board's rules and regulations define a "Doctor of Oriental Medicine" as "an individual licensed to practice acupuncture and related techniques, including oriental medicine, pursuant to the Act and as such has responsibility for his or her patient as an independent specialty care provider." As noted above, the injunction does not preclude Axley from referring to himself as a Doctor of Oriental Medicine, or using the abbreviation "D.O.M." after his name, or performing any activities that lie within the scope of his practice as a Doctor of Oriental Medicine.

The Board's rules do not, however, mention, recognize, or authorize the issuance of a "Doctor of Naturopathy" title. Therefore, the court's order prohibiting Axley from selling medical, healthcare, or healing arts products or services *in such as way as to*

---

[4] Oriental medicine is defined as a "distinct system of primary health care with the goal of prevention, cure, or correction of any illness, injury, pain, or other physical or mental condition by controlling and regulating the flow and balance of energy and functioning of the person to restore and maintain health. Oriental medicine includes all traditional and modern diagnostic, prescriptive and therapeutic methods utilized by practitioners of acupuncture and oriental medicine world wide." Rules and Regulations of the Arkansas State Board of Acupuncture & Related Techniques, Title I.B.

*indicate that he is either a medical doctor or naturopathic doctor* does not enjoin a legal activity, because under Arkansas law, Axley is neither a medical nor a naturopathic doctor.

Finally, Axley raises a brief argument to the effect that there was insufficient evidence to support the trial court's decision to issue the injunction. However, the testimony to which he refers — that is, the testimony of Dr. Scott Hathcott, Dr. Ray Jouett, and Dr. Cynthia Bye — was all offered in support of the State's motion for preliminary injunction. As mentioned above, Axley failed to pursue an interlocutory appeal from the issuance of the preliminary injunction, despite the fact that, under Ark. R. App. P.–Civ. 2(a)(6), he could have undertaken such an appeal. Thus, any arguments pertaining to the issuance of the preliminary injunction are moot. *See Galloway, supra.*

Axley's final point on appeal is that the trial court erred in entering a default judgment in the State's favor in response to the State's motion for discovery sanctions. Under Ark. R. Civ. P. 37(b)(2), if a party fails to obey an order to provide or permit discovery, the trial court may "make such orders in regard to the failure as are just," including an order "rendering a judgment by default against the disobedient party." *See* Ark. R. Civ. P. 37(b)(2)(C). The imposition of sanctions, including dismissal, for failure to provide discovery rests in the trial court's discretion; this court has repeatedly upheld the trial court's exercise of such discretion in fashioning severe sanctions for flagrant discovery violations. *Calandro v. Parkerson*, 333 Ark. 603, 970 S.W.2d 796 (1998). "There is no requirement under Rule 37, or any of our rules of civil procedure, that the trial court make a finding of willful or deliberate disregard under the circumstances before sanctions may be imposed for the failure to comply with the discovery requirements." *Id.* at 608, 970 S.W.2d at 799; *accord National Front Page, LLC v. State*, 350 Ark. 286, 86 S.W.3d 848 (2002); *Viking Ins. Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992); *see also Rodgers v. McRaven's Cherry Pickers, Inc.*, 302 Ark. 140, 788 S.W.2d 227 (1990).

As noted above, on September 9, 2003, the State filed a motion to compel discovery. In its motion, the State pointed out that it had sent its interrogatories and requests for production twice, but SCN claimed it had never received them. In response to this claim, the State faxed SCN's counsel another copy of the

Second Set of Interrogatories and Requests for Production. SCN responded to each request with the following:

> Objection: Southern College of Naturopathic Medicine is the educational branch of the Church of Natural Healing. As a result of the injunction, the Southern College of Naturopathic Medicine has been forced to close, thus all files and records are in the possession of the Church of Natural Healing. Since the Church of Natural Healing is not a party, any request for information would be outside the scope of this lawsuit and the discovery process.

After a hearing, the trial court entered an order granting the State's motion to compel discovery and finding that, under Ark. R. Civ. P. 33(b), SCN and Axley had "waived all objections not specifically pled." In addition, the order directed SCN and Axley to produce all information requested by the State by December 31, 2003. Following entry of this order, the parties entered into an agreed stipulation and protective order by which the State agreed to treat all "medical information" and "student records" as confidential. The stipulation stated that the parties "specifically agree not to disclose to any third party any of the information contained in the medical and/or student records[.]"

On February 12, 2004, the State filed a motion for discovery sanctions. In this motion, the State alleged that, despite the protective order, Axley and SCN had redacted "all personal identifying information, including the name, address, telephone number, and social security number of SCN's "students." The State pointed out that this was precisely the information that had been requested in several of its interrogatories and requests for production, and that the redactions appeared to have occurred on original copies of the records. This destruction of the documents, the State claimed, authorized the imposition of discovery sanctions. The State therefore sought a default judgment, pursuant to Ark. R. Civ. P. 37(b)(2)(C).

The trial court held a hearing on the State's motion for sanctions on March 12, 2004. At this hearing, Debbie Axley, the wife of appellant Gary Axley, testified that, as registrar of SCN, she could have created a list of students' names, addresses, telephone numbers, and social security numbers, and that she was aware that she was under a court order to provide that information. Nevertheless, Mrs. Axley stated, she redacted that information on the original copies of approximately 425 student files. At the conclusion of the hearing, the court found that Axley and SCN had

"willfully disobeyed the court's order" compelling discovery. The court also informed the parties that it would take that willful disobedience into consideration when it issued sanctions. The court stated that it would have to do more research before it would decide whether to grant the State's motion for default judgment.

On May 3, 2004, the trial court entered an order granting the State's motion for discovery sanctions and issuing a default judgment against SCN and Axley. In addition, the court's order made its injunction permanent, and found Debbie Axley in contempt for the redaction of the documents.

On appeal, Axley argues first that the trial court erred in denying its motion to dismiss, filed on April 30, 2003, in which Axley alleged that the State had failed to respond to Axley's discovery requests within thirty days. This motion was filed the same day as the hearing on the State's motion for preliminary injunction. The trial court held a hearing on Axley's motion prior to considering the merits of the petition for preliminary injunction. At that time, Axley argued that the State was "stonewalling" on discovery, and complained that the State had answered many of the interrogatories with a promise to provide information as it became available. The State responded that many of the questions asked in the interrogatories were ones to which Axley already knew the answers, and others involved information that was irrelevant to the issue of whether the injunction was warranted. After considering both parties' arguments, the trial court denied Axley's motion to dismiss without comment. The trial court's denial was not an abuse of discretion. When a party has in its own possession the information it seeks to discover, it is not an abuse of discretion on the part of the trial court to decline to impose discovery sanctions. *See Howard v. State*, 348 Ark. 471, 79 S.W.3d 273 (2002).

Next, Axley complains that it should not have been required to compile lists of information, such as lists of the names, addresses, and phone numbers of all students who have enrolled in classes at SCN, in response to the State's discovery requests. He argues that the rules governing discovery do not "contemplate that a party would be forced to compile any new documents." However, the rules themselves contemplate that interrogatories are to be "answered separately and fully in writing under oath." Ark. R. Civ. P. 33(b)(1). Nothing in Rule 33 prevents a request to a party to compile the information sought to be discovered. It is true that

Rule 33(d) gives a party the option of providing business records, but nothing in the plain language of the rule states that it is improper to request lists of information.

Finally, Axley appears to argue that the trial court erred in basing the decision to grant the State's motion for default judgment on the fact that Debbie Axley redacted the identifying information from the student records that the State had sought to discover. At a hearing on March 12, 2004, the State reminded the court that it had already granted the State's motion to compel discovery, and yet Axley had destroyed the very information that the State sought when he redacted the student files. The court informed Axley that it was going to take the request for sanctions under advisement, and that it was considering granting the State's motion for default judgment.

In *Viking Ins. Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992), this court upheld the imposition of a default judgment as a discovery sanction, holding that the trial court did not abuse its discretion in entering the sanctions when the "sanctions were imposed only after the trial court considered all of the circumstances surrounding the defendant's refusal to obey the court order to produce its 'entire claim file.' " *Viking Ins. Co.*, 310 Ark. at 325. In addition, this court affirmed the entry of a default judgment where the trial court was faced with a defendant that refused to answer any requests for discovery, failed to appear at a hearing on a motion to compel discovery, and refused to appear for trial. *See National Front Page*, 350 Ark. at 294.

In this case, as in all discovery cases, the trial court was in a superior position to judge the actions and motives of the parties, and this court will not second guess the trial court in the instant case. *See Calandro, supra.* We hold that the trial court did not abuse its discretion in imposing discovery sanctions against Axley and SCN.

Affirmed.