2010 Ark. App. 259

**Donald M. VALENTINE, Appellant**

v.

**Christy VALENTINE, Appellee.**

**No. CA 08–1518.**

Court of Appeals of Arkansas.

March 17, 2010.

Rehearing Denied April 21, 2010.

William Palma Rainey, Marion, AR, Christopher Aaron Averitt, Jonesboro, AR, for appellant.

Serena Thompson Green, Jonesboro, AR, for appellee.

DAVID M. GLOVER, Judge.

Matt and Christy Valentine were married in 1996 and divorced in 2006. During the marriage, they had two children, a girl, M.G. (DOB 3/28/98), and a boy, J.M. (DOB 7/6/00). At the time of the divorce, the parties agreed they would have joint custody, with Christy having primary physical custody. By petition filed September 27, 2007, Christy sought modification of the divorce decree, alleging material and substantial changes in circumstances entitling her to an increase in child support. Matt responded, denying that an increase was warranted and counterclaiming for sole custody of the children. Following a six-day hearing, conducted over two months, the trial court granted Christy's request for additional child support and attorney's fees and denied Matt's counterclaim for sole custody. Matt challenges the trial court's denying him custody of the children, increasing his child-support obligations, and awarding Christy attorney's fees. We affirm.

I. *The trial court erred in refusing to award Matt Valentine custody of his children.*

The essence of Matt's argument under his first point of appeal is that he demonstrated evidence of Christy's adulterous conduct both before and after the divorce, which justified a change of custody, and that—in light of such evidence—the trial court erred in refusing to change primary custody to him. In making the argument, he raises several subpoints: 1) that the trial court erred in concluding Christy has somehow reformed her behavior, 2) that the trial court erred in imposing a burden on Matt to prove the existence of an adverse impact on the children, 3) that the trial court erred in failing to presume that Christy's illicit sexual conduct is detrimental to the children, 4) that the trial court's finding that Christy was incapable of instructing the children on the institution of marriage required a change of custody, and 5) that the trial court erred in punish-

ing Matt for not disclosing Christy's illicit sexual behavior at the time of the divorce. We find no basis for reversal in these subpoints under this global argument.

## Standard of Review

This court repeated its familiar standard of review for custody cases in *Harrison v. Harrison,* 102 Ark.App. 131, 133–34, 287 S.W.3d 601, 604 (2008):

> In reviewing [equity] cases, we consider the evidence de novo, but will not reverse a [trial court's] findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Jones v. Jones,* 326 Ark. 481, 931 S.W.2d 767 (1996). We give due deference to the superior position of the [trial court] to view and judge the credibility of the witnesses. *Noland v. Noland,* 330 Ark. 660, 956 S.W.2d 173 (1997). This deference to the [trial court] is even greater in cases involving child custody, as a heavier burden is placed on the [trial court] to utilize to the fullest extent [its] powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Anderson v. Anderson,* 18 Ark.App. 284, 715 S.W.2d 218 (1986). Where the [trial court] fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the [trial court] *could* have found a change in circumstances. *Campbell v. Campbell,* 336 Ark. 379, 985 S.W.2d 724 (1999); *Stamps v. Rawlins,* 297 Ark. 370, 761 S.W.2d 933 (1988).

Our law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Digby v. Digby,* 263 Ark. 813, 567 S.W.2d 290 (1978). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the [trial court] or were not known by the [trial court] at the time the original custody order was entered. *Jones,* 326 Ark. 481, 931 S.W.2d 767. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*

(quoting from *Hamilton v. Barrett,* 337 Ark. 460, 465–66, 989 S.W.2d 520, 523 (1999)).

## Letter Opinion

Here, in its letter opinion, the trial court made its disgust for Christy's conduct clear with comments such as:

1) "Doubtless, if the Court had been made aware of [Christy's] lewd and shameless conduct, the custody would have been awarded to [Matt]. She was much more concerned with satisfying her sexual urges than taking care of, or being concerned with, the needs of the children. But that was then."

2) "Almost without question, had the Court been aware of [ Christy's] conduct, custody would have been awarded to [Matt]."

3) "But it is disheartening to hear a case, where the custodian is so lacking in moral character. She even seems oblivious to her neglect of her duty to lead a life that sets a good example for her children. She claims not to know the difference between a man who is divorced, and one who is still married. This man, whom she is serving as paramour in an explicitly adulterous relationship, is even under Court order to keep

his child away from her. There are a number of cases teaching that sexual promiscuity is not countenanced or condoned, in a custody context."

4) "Further, her breach of her fiduciary duty in tending to her father's estate is likewise a serious blemish on her character. Moreover, her protestation of lack of understanding of the seriousness of her defalcation seems insincere and untruthful."

5) "[T]he Court finds it was [Christy's] affairs with other men that ruined the marriage."

6) "And her unfaithfulness was startlingly debauched, including having sex with a former student, in daylight, in a car, in a public park."

7) "For today's decision, the Court must conclude that defendant has no respect for an important institution [marriage], and thus will not properly instruct the children with respect to that aspect of their rearing."

Countering these adverse comments, the trial court also stated in its letter opinion:

1) "And why did the Court award custody to [Christy] ? At [ Matt's] urging and petition. In fact, he never filed to change custody, until after [Christy] filed to increase the child support."

2) "But the primary consideration of the decision, is always the children's best interest. The record shows that the children are doing well in school, well adjusted and happy."

3) "The children seem to be doing well, as best the Court can divine on this record. The Court can't help but be concerned of the adverse effect on the children witnessing their mother pandering to a married man—their next door neighbor. But the Court cannot find that, as of now, that has adversely affected them, or their view of proper conduct. It seems that a change of cus-

tody would be less attending to what's best for the kids, and more a punishment for [Christy]."

### The Sub–Points

#### 1) No decrease in immoral behavior

For his first subpoint, Matt argues that the trial court improperly disregarded its own statements that it would have undoubtedly awarded primary custody to Matt if it had known of Christy's conduct at the time the divorce decree was entered by simply commenting, "But that was then," thereby implying that Christy's behavior had improved. Appellant argues that the record shows her conduct continued, and therefore the trial court improperly disregarded that fact. The short answer to this subpoint is that the trial court clearly did *not* disregard Christy's continuing conduct, and, in fact, went to great lengths in expressing its disapproval of her conduct, both pre- and post-divorce.

#### 2) Adverse impact on the children

For this subpoint, Matt contends that the trial court erred in placing a burden on him to prove the children had been adversely impacted by Christy's behavior. Our review of the record convinces us that the trial court placed no such burden on Matt. The trial court merely said: "The Court can't help but be concerned of the adverse effect on the children witnessing their mother pandering to a married man—their next door neighbor. But the Court cannot find that, as of now, that has adversely affected them, or their view of proper conduct." The trial court was simply assessing whether there had been an adverse impact. It in no way placed a burden on Matt to prove such an impact. The trial court's analysis was appropriate.

In *Calhoun v. Calhoun*, 84 Ark.App. 158, 162–63, 138 S.W.3d 689, 691–92 (2003), we explained:

> The Arkansas Supreme Court has stated that "the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary." *Hamilton v. Barrett*, 337 Ark. 460, 466, 989 S.W.2d 520, 523 (1999). Further, the court has stated that "[a] judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered." *Jones v. Jones*, 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996). "[C]hild custody is determined by what is in the best interests of the child, and it is not altered absent a material change in circumstances." *Id.* at 487, 931 S.W.2d at 770. "The party seeking modification of the child-custody order has the burden of showing a material change in circumstances." *Id.* at 491, 931 S.W.2d at 772. Further, "[f]or a trial court to change the custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child." *Lewellyn v. Lewellyn*, 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002).

We conclude appellant is correct in her assertion that the circuit court failed to consider the best interest of the minor child. After the court found that appellant had met her threshold burden of showing a material change in circumstances, the court then stated that appellant did not "show" that a modification would be in the best interest of the child, as she did not "show" that the child had suffered an "adverse impact" by reason of the changed circumstances. In doing so, the court failed to apply the two-step analysis described above and as set forth in *Lewellyn.* After the noncustodial parent has shown a material change in circumstances, rather than requiring the noncustodial parent to then show an adverse impact on the child, the court should weigh these material changes and consider the best interest of the child. *Here, the court found there was a material change in circumstances but then placed an additional burden on appellant, that is, a showing of an "adverse impact" on the child, without simply weighing the child's best interest.*

*We do not hold, however, that the circuit court should never consider whether there was adverse impact on the child when determining whether a material change in circumstances has occurred.* In *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), the Arkansas Supreme Court addressed the issue of whether the noncustodial parent showed a material change in circumstances. In holding that the noncustodial parent's evidence was insufficient to constitute a material change in circumstances, the court noted that the noncustodial parent "failed to demonstrate any actual harm or adverse effect." Accordingly, in some instances it may be the adverse impact on a child that makes a change in circumstances "material." This is also in keeping with *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). There, the Arkansas Supreme Court held that the custodial parent's relocation no longer constituted a material change in circumstances, and there was a presumption in favor of relocation, with the noncustodial parent having to

rebut the presumption. In that case, the court concluded that there was no material change in circumstances, noting that there was no evidence that the relocation would be detrimental to the children.

*Moreover, we do not hold that in making a determination of the best interest of a child, the court cannot consider whether the material change in circumstances had an adverse impact on the child. See Lewellyn, supra (determining the best interest of a child by considering whether a material change in circumstances had a "negative emotional impact" on the child). We hold that once the noncustodial parent has established a material change in circumstances, the court is to weigh the best interest of the child to determine which parent shall serve as the custodian of the child.*

(Emphasis added.)

Here, the trial court clearly considered the evidence of adulterous conduct to represent a material change of circumstances, or more precisely, material circumstances of which it had not been made aware at the time of the divorce. Then, in determining the best interests of the children, the trial court took those circumstances into account, along with whether those circumstances had an adverse impact on the children; the trial court decided that—despite the mother's conduct—it was in the children's best interest for Christy to retain primary custody. We find no error in his method of analysis.

### 3) Failure to presume that Christy's illicit sexual conduct is detrimental to the children

Under this subpoint, Matt contends that once he established Christy had engaged in illicit sexual conduct, the "trial court was obligated ... to consider the actual and potential harm that Christy's conduct posed to her children in determining whether continuing the custody arrangement was in the best interest of the children in view of the proof." He further argues that the "trial court was required to presume that Christy's illicit sexual behavior is harmful to the children, and, certainly, there was no evidence submitted that would be sufficient to rebut this presumption."

Again, the trial court clearly did not approve of Christy's conduct, but proof of that conduct alone did not require a change of custody. The trial court's primary consideration was determining the best interests of the children, and, in making that determination, it did consider the potential harm that Christy's conduct posed to her children. In the final analysis, however, the trial court concluded that the children's best interests were better served by leaving primary custody with Christy.

### 4) Incapable of instructing the children on the institution of marriage

For his next subpoint, Matt argues that the trial court's finding that Christy was incapable of instructing the children on the institution of marriage alone justified a change of custody. Again, that was not the trial court's conclusion, and Matt's argument does not provide a convincing basis for reversal.

### 5) Punishing Matt for not disclosing Christy's illicit sexual behavior at the time of the divorce

For his final subpoint, Matt contends that the trial court's decision was based on a desire to punish Matt for not disclosing Christy's conduct at the time of the divorce. There is simply no basis in the record to support this assertion.

## II. *The trial court erred in increasing Matt Valentine's child-support obligations.*

■ The trial court found that because of an increase in Matt's reported income, there had been a substantial and material change in circumstances since the prior decree and that the amount of child support should be increased. In determining the appropriate amount of child support, the trial court explained:

> For two children, the guidelines fix 21% as the presumptive correct amount (over the chart) which figures out as $14,343.00 monthly. The question arises, should the Court deviate from the chart amount? Defendant's Exhibit # 86 reflects that she has a net take home pay of $4,896.62 monthly. Her expenses for herself and the two children totals $6,500.00 a month, this would more than cover all defendant's living expenses for herself and the children, and she would still have her monthly salary, after taxes, of $4,896.62. The monthly child support is not taxable to the defendant, and this award would seem to be the proper amount. For these reasons, the Court deviates downward from the chart, and orders $6,500.00 child support a month, retroactive back to when the petition to modify was filed, September 27, 2007.

Then, in determining the appropriate retroactive amount, the trial court credited Matt for the monthly child support that he had paid, against the $6,500 monthly amount newly awarded, resulting in a balance of $45,900.

■■ The amount of child support lies within the sound discretion of the circuit court, and we will not reverse that amount absent an abuse of discretion. *Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006). The circuit court is required to reference the child-support chart, and the amount specified in the chart is presumed to be reasonable. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002); Ark.Code Ann. § 9–14–106 (Repl.2009). This statute creates a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. Ark.Code Ann. § 9–14–106(a)(1)(B).

Here, the trial court supported its deviations *downward* from the chart amount with written findings and did not abuse its discretion in doing so.

## III. *The trial court erred in awarding Christy Valentine attorney's fees.*

In its letter opinion, the trial court also explained:

> The defendant has incurred attorney fees in [the] amount of $31,000.00. This fee seems reasonable and justified by the record, and the plaintiff is able to pay. The Court orders plaintiff to pay defendant $31,000.00 as attorney fee. *Jones v. Jones*, 327 Ark. 195, 938 S.W.2d 228 (1997). (Attorney fee allowed in child-custody modification context).

■ Appellant does not challenge the amount of attorney's fees; rather, he simply challenges the trial court's decision to make him pay it. His argument is based primarily upon his assertion that Christy had "the financial means to pay for all, if not at least some portion, of her own attorney fees."

■ In *Jones v. Jones*, 327 Ark. 195, 198, 938 S.W.2d 228, 229 (1997), our supreme court explained:

> We find ample authority permitting an award of attorney's fees in cases involving the modification of a custody decree. A court enjoys inherent authority to award attorney's fees in such cases. Moreover, Ark.Code Ann. § 9–12–309(a) (Repl.1993), which authorizes the award

of attorney's fees in divorce actions, has been construed as permitting the award of attorney's fees in child-custody modification actions, as the latter necessarily derive or continue from the former.

(Internal citations omitted.) Whether to allow such fees and in what amounts are matters within the trial court's discretion. *Schwarz v. Moody,* 55 Ark.App. 6, 928 S.W.2d 800 (1996). In the absence of a clear abuse of discretion in fixing such a fee, we will not disturb the trial court's decision on appeal. *Id.* We find no abuse of discretion in the trial court's award of attorney's fees in this case.

Affirmed.

GLADWIN and KINARD, JJ., agree.