
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-250

| | |
|---|---|
| JOANNE AMY DOUGHTY<br>APPELLANT/CROSS-APPELLEE | **Opinion Delivered** September 13, 2017 |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26DR-13-377] |
| V. | |
| | HONORABLE VICKI SHAW COOK, JUDGE |
| RICHARD WILLIAM DOUGLAS<br>APPELLEE/CROSS-APPELLANT | AFFIRMED IN PART; REVERSED IN PART |

**PHILLIP T. WHITEAKER, Judge**

Appellant/cross-appellee Joanne Doughty and appellee/cross-appellant Richard Douglas are the parents of a minor child, E.D. This appeal stems from an October 2014 decision by the Garland County Circuit Court that awarded joint custody to both Doughty and Douglas. Doughty filed a direct appeal, and Douglas filed a cross-appeal. This court dismissed Doughty's direct appeal in January 2017.[1] As such, the only issues before the court

---

[1]Doughty's direct appeal was ultimately dismissed because of her failure to file an appellate brief that conformed with Arkansas Supreme Court Rule 4-2. *See Doughty v. Douglas*, 2016 Ark. App. 461, 503 S.W.3d 848 (advising Doughty that failure to file a conforming brief would result in summary dismissal). That appeal, docketed in this court as CV-14-954, was consolidated with *Doughty v. Douglas*, CV-15-250, in which Doughty attempted to appeal from orders that had been entered subsequent to the October 2014 custody order. The direct appeal in CV-15-250 was likewise dismissed by this court in January 2017 for failure to file a conforming brief. The instant case, which retains docket number CV-15-250, represents Douglas's original cross-appeal in CV-14-954.

at this juncture are those raised in Douglas's cross–appeal, wherein he presents two points for reversal: (1) the circuit court erred in exercising jurisdiction under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), Ark. Code Ann. §§ 9-19-101 to –401 (Repl. 2015); and (2) the circuit court erred in awarding Doughty interim attorney's fees throughout the pendency of the case. We affirm on the issue of jurisdiction; we affirm in part and reverse in part on the issue of attorney's fees.

## I.  *Jurisdiction under the UCCJEA*

### A.  Background

Douglas is a resident of Australia, and Doughty is a resident of the United States. The couple met in the United States and began a relationship that spanned several years. In 2008, Doughty moved to Australia, where the relationship continued and Doughty became pregnant with E.D. Prior to the birth of E.D., Doughty left Australia and moved to California, where E.D. was born on August 7, 2010. After E.D.'s birth, Doughty and the child lived in California. Douglas continued to reside in Australia, but he visited Doughty and E.D. in California at least five times between E.D.'s birth and March 2012. On September 3, 2012, however, Doughty moved with E.D. to Hot Springs, Arkansas, without informing Douglas.

On March 4, 2013, Douglas filed a "Petition to Establish Parental Relationship" in the Superior Court of Orange County, California ("the California court"). Doughty responded in the California court by filing a motion to quash the proceedings. On April 19, 2013, Doughty filed a petition to establish paternity in the Garland County Circuit Court

2

("the Arkansas court"). Douglas responded with a special appearance and objection to jurisdiction, arguing that he had previously filed an action in California—where E.D. had lived from the time of his birth until Doughty's unilateral move to Arkansas—and that the Arkansas court therefore lacked jurisdiction over the matter.

On May 17, 2013, the California court held a hearing on Doughty's motion to quash and considered whether, in light of the proceedings in Arkansas, it possessed jurisdiction. The California court heard evidence that Douglas resided in Australia, that both Doughty and E.D. had been residents of Arkansas since September 5, 2012, and that Doughty had also commenced a cause of action in the state of Arkansas. The California court noted that Douglas had the burden of establishing jurisdiction within the state of California and opined that Douglas had not met his burden. The court noted that at least one parent would have to reside in California for the court to have jurisdiction under California's UCCJEA statute. Nevertheless, the California court ultimately denied the motion to quash but decided to stay the California proceedings pending assurances that the Arkansas court would take jurisdiction of the matter.

The Arkansas court then held a telephone conference with the California court on October 21, 2013. Although the parties were present at the outset of the conference, the California court requested that they be excused from hearing the judges' conversation. Following that conversation, the Arkansas court called the parties back into the courtroom and summarized its conference with the California court:

> [The California court] said initially, when they did the Motion to Quash, nothing had been filed in Arkansas. Once something was filed in Arkansas, on April 19, 2013, [the

California judge's] position is that I [the Arkansas court] have sole jurisdiction, that California does not have jurisdiction. [The California court] is going to grant the Motion to Quash. He may use inconvenient forum. He does not believe he has jurisdiction in any shape or form of this case. I accept jurisdiction.[2]

No party objected to the circuit court's summation of the conversation or the manner in which the court memorialized the conversation. Douglas nevertheless maintained that the Arkansas court should decline jurisdiction until it had the opportunity to study whether Doughty had engaged in "bad acts" in order to invoke the jurisdiction of the Arkansas court. Doughty responded that because California had declined jurisdiction, there was no state other than Arkansas where jurisdiction could be exercised. The circuit court concluded that Arkansas was the home state, and given California's decision to decline jurisdiction, Arkansas was the state that should properly hear the case.

On appeal, Douglas raises four separate subpoints pertaining to the circuit court's exercise of jurisdiction pursuant to the UCCJEA: (1) the circuit court failed to make a record of its communication with the California court as required by Arkansas Code Annotated section 9-19-110; (2) the circuit court denied Douglas the opportunity to present facts relevant to Doughty's unjustifiable conduct before making its decision on jurisdiction as required by Arkansas Code Annotated sections 9-19-110 and 9-19-206; (3) the circuit court clearly erred in failing to determine that Doughty acquired jurisdiction in Arkansas through unjustifiable conduct; and (4) the circuit court erred in refusing to decline jurisdiction

---

[2]The record before us does not contain a formal order of the California court declining jurisdiction.



pursuant to Arkansas Code Annotated section 9-19-208. Before we address these specific arguments, we will address the law under the UCCJEA and our standard of review.

## B.  The UCCJEA

The UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *Newkirk v. Burton*, 2015 Ark. App. 627, at 4, 475 S.W.3d 573, 575. The purpose of the UCCJEA is to avoid jurisdictional competition and conflict with courts in matters of child custody. Ark. Code Ann. § 9-19-101 ed. note (West, Westlaw through the ends of the 2017 Reg. Sess. and the 2017 First Extraordinary Sess. of the 91st Ark. Gen. Assembly (including changes made by the Ark. Code Revision Comm'n received through July 14, 2017)). To that end, the provisions of the act are established to discourage the use of the interstate system for continuing controversies over child custody and to promote cooperation within the judicial system of state courts to render custody determinations in the state which can best decide the matter in the best interest of the child. *Id*. The idea behind the UCCJEA is to avoid situations where the same parties are litigating custody matters over the same child in at least two different courts at the same time. When at least two different courts are presented with situations in which the same parties are litigating custody matters over the same child, the UCCJEA provides principles and procedures for the courts to utilize in determining which court is the proper court to exercise jurisdiction, among which are determinations of "home state" and "more convenient forum."

SLIP OPINION

An Arkansas court has jurisdiction to make an initial child-custody determination if this state is the home state of the child on the date of the commencement of the proceedings. Ark. Code Ann. § 9-19-201(a)(1). By definition of law, a "home state" is "the state in which the child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding." Ark. Code Ann. § 9-19-102(7). As Doughty had lived in Garland County with E.D. for more than six months prior to filing her petition for paternity there, Arkansas was E.D.'s home state for purposes of her paternity action under the UCCJEA.

Even if Arkansas is the home state for purposes of the UCCJEA, however, Arkansas Code Annotated section 9-19-206(a) establishes circumstances in which a court of this state may not exercise its jurisdiction. An Arkansas court is prohibited from exercising jurisdiction if, at the time of the commencement of the Arkansas proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with the UCCJEA. This prohibition does not apply when the proceeding in the other state has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under section 9-19-207.[3]

Our standard of review in a case involving the UCCJEA is de novo, although we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Ark. Dep't of Human Servs. v. Waugh*, 2015 Ark. App. 155, at 4, 457 S.W.3d 286, 289 (citing *Thomas v.*

---

[3]Section 9-19-207 provides that a court having jurisdiction to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. Ark. Code Ann. § 9-19-207(a).

*Avant*, 370 Ark. 377, 260 S.W.3d 266 (2007)); *Ullrich v. Walsh*, 2010 Ark. App. 290, 373 S.W.3d 413. Once a circuit court determines that it has jurisdiction pursuant to the UCCJEA, it has the discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision on that matter absent an abuse of that discretion. *Hatfield v. Miller*, 2009 Ark. App. 832, at 3, 373 S.W.3d 366, 369–70; *Wilson v. Beckett*, 95 Ark. App. 300, 236 S.W.3d 527 (2006).

## C. Discussion

Douglas's first subpoint under his argument that the Arkansas court lacked jurisdiction pertains to the Arkansas court's communication with the California court. Under the provisions of the UCCJEA, when a child-custody proceeding has been commenced in both Arkansas and another state having jurisdiction substantially in accordance with the UCCJEA, the Arkansas court shall stay its proceeding and communicate with the court of the other state. Ark. Code Ann. § 9-19-206(b). Such communications are governed by Arkansas Code Annotated section 9-19-110, which provides as follows:

> (a) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.
>
> (b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
>
> (c) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.
>
> (d) Except as otherwise provided in subsection (c) of this section, a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.

(e) For the purposes of this section, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

Douglas contends on appeal that the Arkansas court erred in failing to make a record of its communications with the California court in accordance with section 9-19-110(d).

In support of his argument, Douglas points to what he describes as a "discrepancy" between the statements of the California court at the May 2013 hearing and the comments of the Arkansas court following its communication with the California court in October 2013. Specifically, he notes that the California court indicated in May 2013 that it would deny Doughty's motion to quash and stay its proceedings, but the Arkansas court stated in October 2013 that the California court had expressly decided that it would grant the motion to quash and decline jurisdiction. The Arkansas court's failure to make a record of the conversation pursuant to section 9-19-110, Douglas argues, was therefore in error.

We cannot discern reversible error on this issue. We do not agree with Douglas that "discrepancies" exist between the statements of the California court at the May 2013 hearing and the comments of the Arkansas court following its communication with the California court in October 2013. The California court clearly indicated at the May 2013 hearing that Douglas had the burden of proving jurisdiction in California, that Douglas had not met that burden, and that California did not have jurisdiction. The California court merely stayed the proceeding until Arkansas assumed jurisdiction.

More importantly, we do not find reversible error because, as mentioned above, Douglas failed to object to the circumstances of the Arkansas court's communication with

the California court, its methods of recording that conversation, or the Arkansas court's summarization of the California court's decision on jurisdiction. It is well settled that this court will not consider arguments raised for the first time on appeal. *McCoy v. Montgomery*, 370 Ark. 333, 343, 259 S.W.3d 430, 437 (2007); *Ford Motor Co. v. Ark. Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004).

Moreover, at a February 2014 hearing at which Douglas continued to protest the Arkansas court's assumption of jurisdiction, the court asked why Douglas would not choose to dismiss the California action and acquiesce to the proceedings going forward in Arkansas; Douglas's counsel replied, "Your Honor tells me what the judge in California said. I don't quarrel in any way with Your Honor's record of that." Having acquiesced to the manner in which the Arkansas court made a record of its previous communication with the California court, Douglas should not be heard to argue on appeal that the court's record of that communication was somehow improper. *See, e.g.*, *Greene v. State*, 317 Ark. 350, 359, 878 S.W.2d 384, 390 (1994) ("An appellant cannot agree to the trial court's disposition of an issue and then on appeal argue that the trial court erred in doing what he agreed the trial court could do.").

In essence, we have a situation in which the California court never appeared convinced that it properly possessed jurisdiction, which was understandable given the lack of any party actually residing in California at the time the action was filed there. The California court informed the Arkansas court that it was going to decline jurisdiction in favor of Arkansas. The Arkansas court informed the parties of the California court's decision to

decline jurisdiction. Douglas, as the party who was challenging the court's jurisdiction, did not object to the court's summation or presentation of the California court's decision. Accordingly, we are unable to reverse on this issue.

Douglas's three remaining points pertaining to jurisdiction involve Doughty's alleged unjustifiable conduct in invoking the jurisdiction of the Arkansas court. As noted above, he maintains that the circuit court erred in depriving him of the opportunity to present facts relevant to Doughty's unjustifiable conduct before making its decision on jurisdiction; that it erred in failing to find that she engaged in unjustifiable conduct; and that the court erred in refusing to decline jurisdiction under section 9-19-208. That section provides, in pertinent part, as follows:

> Except as otherwise provided in § 9-19-204 or by other law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction *unless*:
>
> (1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
>
> (2) a court of the state otherwise having jurisdiction under §§ 9-19-201 — 9-19-203 determines that this state is a more appropriate forum under § 9-19-207; or
>
> (3) *no court of any other state would have jurisdiction* under the criteria specified in §§ 9-19-201 — 9-19-203.

(Emphasis added.) Thus, although a court of this state should decline jurisdiction if its jurisdiction has been invoked by a person who has engaged in unjustifiable conduct, it is not required to do so if, among other things, no court of any other state would have jurisdiction.

SLIP OPINION

That is precisely the situation presented here. California declined jurisdiction. If Arkansas were to do likewise, no state would have jurisdiction, and the parties would be without a forum for their litigation, regardless of Doughty's alleged unjustifiable conduct. On these facts, we are unable to say that the circuit court abused its discretion in determining that it possessed jurisdiction over the parties' custody matter.

## II. *Attorney's Fees*

In his second argument on appeal, Douglas argues that the court erred in ordering him to pay interim attorney's fees and costs to Doughty throughout the course of litigating this paternity and custody action. In *Davis v. Williamson*, 359 Ark. 33, 194 S.W.3d 197 (2004), the supreme court explained that attorney's fees may be awarded in a paternity action, pursuant to the statutory authority found in Arkansas Code Annotated section 9-27-342 and in Arkansas Code Annotated section 9-10-109. The court noted:

Arkansas Code Annotated section 9-27-342(d) (Repl. 1998) provides:

> (d) Upon an adjudication by the court that the putative father is the father of the juvenile, the court shall follow the same guidelines, procedures, and requirements as established by the laws of this state applicable to child support orders and judgments entered upon divorce. The court may award court costs and attorney's fees.

Arkansas Code Annotated section 9-10-109(a) (Supp. 2001) provides in pertinent part:

> subsequent to a finding by the court that the putative father in a paternity action is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support, costs, and attorney's fees . . . .

11

Ark. Code Ann. § 9-10-109 (Supp. 2001). Thus, [the] procedure applicable to child support orders entered upon divorce applies to a motion on attorney's fees in a paternity action.

*Davis*, 359 Ark. at 39–40, 194 S.W.3d at 201.

In domestic-relations cases, a circuit court has the inherent power to award attorney's fees. *Scudder v. Ramsey*, 2013 Ark. 115, 426 S.W.3d 427. This may be done even on an interim basis. Ark. Code Ann. § 9-12-1309(a).[4] There is no fixed formula for determining what constitutes a reasonable amount of attorney's fees. *See Yancy v. Yancy*, 2014 Ark. App. 256. That said, however, pertinent considerations in determining an attorney's-fee amount are the attorney's judgment, learning, ability, skill, experience, and professional standing; the relationship between the parties and the importance of the subject matter of the case; the nature, extent, and difficulties of services; the research, anticipation of defenses, and means of meeting them; and receiving of confidential information and giving of confidential advice before any pleadings are filed or other visual steps are taken. *James v. Walchli*, 2015 Ark. App. 562, at 8, 472 S.W.3d 562, 508; *Paulson v. Paulson*, 8 Ark. App. 306, 652 S.W.2d 46 (1983). The relative financial ability of each party is a consideration, but it is not determinative. *James*, *supra* (citing *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265; *Valentine v. Valentine*, 2010 Ark. App. 259, 377 S.W.3d 387). The trial court's own experience and knowledge of the character of such services may be used as a guide. *Id.* (citing *Robinson v. Champion*, 251 Ark. 817, 475 S.W.2d 677 (1972)). Unless a clear abuse of discretion is

---

[4]We note that Douglas does not assign error to the interim nature of the award of attorney's fees.

evident, we will not disturb the circuit court's action in fixing the attorney fee. *Id.* (citing *Warren v. Warren*, 270 Ark. 163, 603 S.W.2d 472 (1980)).

In this case, the circuit court entered three separate orders awarding Doughty interim attorney's fees. The gist of Douglas's argument, however, is the same regarding each of them. Douglas contends that the circuit court abused its discretion by awarding Doughty interim attorney's fees and costs "because the sole basis for these awards was the disparity in the parties' incomes."

We will examine each order on its own. The first order, entered on December 23, 2013, awarded Doughty $9,045 in attorney's fees. In this order, the circuit court expressly referenced the time spent by Doughty's counsel and counsel's paralegal; the fact that counsel was well known to the court; counsel's years of practice; and counsel's ability to obtain favorable results for his clients.[5] With respect to this order, we are simply unable to agree with Douglas's contention that the disparity between his and Doughty's incomes was the sole consideration for the circuit court's award of fees. Finding no abuse of discretion, we affirm the December 2013 award of attorney's fees.

The second order was entered on May 20, 2014. Here, the court ordered Douglas to pay $10,000 a month for the next three months leading up to the trial scheduled in July. At the hearing preceding this order, it was clear that the primary focus of the parties was on Doughty's inability to pay her attorney and on Douglas's significantly greater income. For

---

[5]At the hearing on this petition for fees, even Douglas's counsel conceded that "we're not opposed to the court awarding a reasonable fee for the filing of a paternity action and a determination of paternity."

example, it was noted that Douglas's affidavit of financial means indicated that his take-home pay was $400,000, while Doughty worked as a salesperson at a radio station. The circuit court's second written order on fees made no mention of any other factor that influenced the court's determination of the amount to be awarded. With respect to the May 2014 order, we agree with Douglas that the circuit court considered the relative financial ability of each party to be determinative, and we conclude that this amounted to an abuse of discretion.

In the third order, entered on August 11, 2014, the court ordered Douglas to pay $20,250. In her motion seeking fees at this juncture, Doughty specifically referenced the fact that she was "disadvantaged by the fact that [Douglas] makes $800,000 per year and has over one million dollars in his savings accounts. Because of this access to funds, [Douglas] has been able to hire investigators, dig for information, and invest time in the case that [Doughty] cannot afford." At the hearing on the motion, Doughty's counsel reiterated that "I can't do a lot of things that they're able to do because of the money and the access." The court's order granting Doughty's motion for attorney's fees again made no mention of any factors that contributed to the court's decision. Because we can discern no reason for the court's award of fees other than Douglas's superior ability to pay, we find that the August 2014 award of attorney's fees also amounted to an abuse of discretion.

Finally, Douglas challenges the award of specific costs in three separate instances: (1) the award of $165 in costs as part of the December 23, 2013 award of fees; (2) an award of expert-witness fees as part of the May 20, 2014 award of fees; and (3) an award of inappropriate "court costs" in the August 11, 2014 award of fees. Douglas's complaints

14

regarding the May 2014 and August 2014 costs are moot because we have reversed those awards of attorney's fees. As to the December 2013 award, it is not apparent that Douglas objected to the award of those costs at the time the court entered its order. It is well settled that we will not consider an argument raised for the first time on appeal. *McCoy*, *supra*.

Affirmed in part; reversed in part.

GLOVER and HIXSON, JJ., agree.

*McKendra L. Adams*, for appellant/ cross-appellee.

*Crawford Law Firm*, by: *Michael H. Crawford*; and *Kamps & Stotts, PLLC*, by: *Adrienne M. Griffis*, for appellee/ cross-appellant.